UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, TRANSPORTATION CABINET,  Plaintiff,  v.  WILLIE T. BROWN, *et al.*,  Defendants. | Civil No. 3:24-cv-00026-GFVT  **MEMORANDUM OPINION & ORDER** |

*** *** *** ***

A state is not a citizen for the purposes of diversity jurisdiction. Because Kentucky's Transportation Cabinet represents an "alter ego" of Kentucky, the Court will **GRANT** the Plaintiff's Request to Remand for Want of Jurisdiction. **[R. 10].**

**I**

Willie Brown and Robert Watts are commercial truck drivers.[1] [R. 1-1 at 1–2.] While traveling on I-65 in Kentucky, one of them lost control of their tractor trailer and crashed. *Id.* The accident allegedly caused "substantial damage" to the Kentucky Transportation Cabinet's property "including, but not limited to, [a] bridge and underlying structures nearby." *Id.* Hoping to recoup the costs of repairs, the Kentucky Transportation Cabinet sued Brown, Watts, and Speedy Transportation, LLC (Brown and Watts' employer), in Franklin Circuit Court. *See generally id.* Those Defendants then attempted removal on the basis of diversity jurisdiction. [R. 1; R. 15.]

---

[1] These allegations are taken from the Plaintiff's Complaint. [R. 1-1.]

Brown, Watts, and Speedy Transportation, LLC are citizens of Alabama. [R. 15 at 4]; [R. 21.] On their view, the Transportation Cabinet is a citizen of Kentucky; thus there is complete diversity among the parties.[2] The Cabinet disagrees ardently, rejecting Defendants' argument as "border[ing] on the preposterous." [R. 16 at 2.]

## II

A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. This Court has original federal question jurisdiction over civil actions that arise under the "Constitution, laws, or treaties" of the United States pursuant to 28 U.S.C. § 1331. This Court also has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the dispute is between parties who are "citizens of different States." *See* 28 U.S.C. § 1332(a). Federal courts are courts of limited jurisdiction, and therefore any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted). In determining the propriety of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Furthermore, the removing defendant bears the burden of showing that removal was proper. *Fenger v. Idexx Lab'ys, Inc.*, 194 F. Supp. 2d 601, 602 (E.D. Ky. 2002) (citations omitted). The general rule is that removal based on diversity of citizenship is proper only where there is complete diversity "both at the time that the case is commenced and at the time that the

---

[2] The parties do not appear to dispute amount in controversy.

2

notice of removal is filed." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). "'Where there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction.'" *Cole v. Great Atl. & Pac. Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (quoting *Walsh v. Am. Airlines, Inc.*, 264 F. Supp. 514, 515 (E.D. Ky. 1967)).

### A

On Defendants' view, the Cabinet is independent from Kentucky because it is financially and bureaucratically autonomous. [R. 13.] The Court is not persuaded.

### 1

"There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973); *see Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) ("[A] suit between a state and a citizen or a corporation of another state is not between citizens of different states, and [] the circuit court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States."). Moreover, citizenship is not afforded to a mere "arm or alter ego of the State[;]" however, "a political subdivision of a State . . . is a citizen of the State for diversity purposes[.]" *Moor*, 411 U.S. at 717.[3]

"Whether a state-created agency is the alter ego of the state depends upon how much autonomy or independence from the state the agency possesses." *Baker v. Minn. Min. & Mfg. Co.*, 99 F. App'x 718, 721 (6th Cir. 2004) (overruled on other grounds). Relevant state law

---

[3] Some courts have proposed that an alter ego inquiry is coterminous with the Eleventh Amendment immunity analysis. *See Mich. Dep't of Transp. v. Allstate Painting & Contracting Co.*, No. 2:08-CV-286, 2009 WL 891702, at *2 (W.D. Mich. Mar. 31, 2009); *but see Univ. of Tenn. v. U.S. Fid. & Guar. Co.*, 670 F. Supp. 1379, 1381 (E.D. Tenn. 1987).

informs an independence analysis. *See Moor*, 411 U.S. at 719–20 (conducting "a detailed examination of the relevant provisions of California law"); *see also Edgar H. Hughes Co. v. Tpk. Auth. of Ky.*, 353 F. Supp. 1105, 1106 (E.D. Ky. 1973). In assessing the contours of state law, district courts have been guided by the following factors:

> 1. the treatment of entity by the state statutes and state courts; 2. the source of the entity's funding; 3. the extent of the entity's local autonomy; 4. whether the entity is concerned primarily with local, as opposed to statewide, problems; 5. whether the entity has the express authority to sue and be sued in its own name; [and] 6. whether the entity has the right to hold and use property.

*Mich. Dep't of Transp. v. Allstate Painting & Contracting Co.*, No. 2:08-CV-286, 2009 WL 891702, at *2–3 (W.D. Mich. Mar. 31, 2009); *Schroer v. Thomas*, No. 3:14-CV-00968, 2014 WL 2458104, at *3 (M.D. Tenn. June 2, 2014), *R. & R. adopted*, 2014 WL 7391706 (M.D. Tenn. Dec. 29, 2014); *see also Kentucky Ret. Sys. v. BHEP GP I, LLC*, No. 3:18-CV-27 (WOB), 2019 WL 5865628, at *8 (E.D. Ky. Aug. 22, 2019) (considering "(1) the agency's 'governmental purpose,' (2) 'the Legislature's control of the [agency],' and (3) 'the Kentucky Supreme Court's treatment of the [agency].'" (quoting *Baker*, 99 F. App'x at 722)).

**2**

Notably, The United States Supreme Court has held that Wyoming's Highway Commission constituted an alter ego of Wyoming. *See State Highway Comm'n of Wyo. v. Utah Const. Co.*, 278 U.S. 194, 199–200 (1929). Federal Courts of Appeal have made similar determinations. *See DeLong Corp. v. Or. State Highway Comm'n*, 233 F. Supp. 7, 15–17 (D. Or. 1964), *aff'd*, 343 F.2d 911 (9th Cir. 1965), *cert. denied*, 382 U.S. 877 (1965); *Arkansas v. Kansas City Bridge Co.*, 81 F.2d 689, 690–91 (8th Cir. 1936), *cert. denied*, 298 U.S. 661 (1936). Further, District courts in the Sixth Circuit and elsewhere have repeatedly found that transportation and highway departments are arms of the states they represent. *See Mich. Dep't of Transp.*, 2009 WL 891702, at *3–4; *Schroer*, 2014 WL 2458104, at *3; *Simmons v. S.C. State*

4

*Highway Dep't*, 195 F. Supp. 516 (E.D.S.C. 1961); *Dunnuck v. Kan. State Highway Comm'n*, 21 F. Supp. 882, 883–84 (D. Kan. 1937).

B

The facts of this case command a similar result.  State law establishes Kentucky's Transportation Cabinet as a "program cabinet" of Kentucky's "state government."  Ky. Rev. Stat. Ann. § 12.250(4).  The Cabinet is controlled by its Secretary; and the Secretary is appointed by the Governor.  Ky. Rev. Stat. Ann. § 12.270; Ky. Rev. Stat. Ann. § 12.255.  Funding for the Cabinet derives from, inter alia, Kentucky's General Fund, taxes, fees, and federal funds.  [R. 15 at 3.]  According to Defendants, "Road Funds" (vehicle registration fees, driver's license fees, motor vehicle taxes, toll fees, fuel taxes, and interest) make up the plurality of the Cabinet's budget.  [R. 13-2; R. 13 at 8.]  "Federal Funds" (inclusive of federal grants, contracts, income from investments, and miscellaneous federal receipts for state agencies) also constitute a substantial percentage of the Cabinet's finances.  [R. 13-2.]

1

First, Defendants argue that the Cabinet's subservience to its Secretary militates against an alter ego finding.  [R. 13 at 9–10.]  However, this argument overlooks some crucial facts.  First, the Cabinet's Secretary is appointed by the Kentucky Governor.  The Secretary "serve[s] as the Governor's liaison in carrying out the responsibilities for overall direction and coordination of the departments, boards, and commissions included in the related cabinet."  § 12.270(1)(a).  Further, the Secretary is tasked with advising the Governor on executive actions, legislation, reorganizations, and appointments of Cabinet Commissioners.  § 12.270(1).  Although the Defendants are correct that the Secretary has "exclusive control" over the administration of

5

Cabinet programs, § 12.270(4), a holistic review of the statutory scheme counsels against a finding of independence from the Commonwealth.

**2**

Next, Defendants emphasize that the Cabinet is "mostly funded by motorists using the roadways and federal funds as opposed to the Commonwealth of Kentucky's General Fund." [R. 15 at 3.] They advise that the General Fund contributes only a miniscule percentage of the Cabinet's overall budget. [R. 13.] Thus, on their view, recovery from this suit would benefit the federal government and Kentucky motorists—not the Commonwealth. *Id.* at 8–10.

Again, this argument misses the forest for the trees. The funding sources cited by Defendants are still generally public in nature. Indeed, the Cabinet represents that it collects taxes, regulates drivers licenses, condemns under imminent domain, enforces regulations, and constructs Kentucky's roads. [R. 16 at 3.] Further, it has consistently enjoyed Eleventh Amendment immunity, both in this Court and in the Sixth Circuit generally. *See Chaz Const., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005) (Kentucky Transportation Cabinet considered "arm of the state" entitled to immunity); *Wilder v. Hall*, 501 F. Supp. 2d 887, 896–97 (E.D. Ky. 2007) (Van Tatenhove, J.) ("The Cabinet is an arm of the state for the purposes of sovereign immunity."); *see also Mathis & Sons, Inc. v. Ky. Transp. Cabinet*, No. 3:14-cv-535-DJH-DW, 2017 WL 3045125, at *9 (W.D. Ky. July 18, 2017), *aff'd*, 738 F. App'x 866 (6th Cir. 2018); *Gritton v. Disponett*, No. CIV.A. 05-75, 2006 WL 2587778, at *2 (E.D. Ky. Sept. 6, 2006), *aff'd in part*, 332 F. App'x 232 (6th Cir. 2009); *In re Shelbyville Rd. Shoppes, LLC*, 486 B.R. 848, 850–51 (Bankr. W.D. Ky. 2013); *Martin v. U.S. Dep't of Transp.*, No. 1:16-CV-00124-GNS-HBB, 2017 WL 3174939, at *3 (W.D. Ky. July 26, 2017) (citing Ky. Rev. Stat. Ann. § 12.250); *see also Com., Transp. Cabinet, Dep't of Highways v. Sexton*, 256 S.W.3d 29,

35–36 (Ky. 2008), *as corrected* (Aug. 26, 2008) (state sovereign immunity applicable to Kentucky Transportation Cabinet). Finally, the Cabinet advises that money recovered from this suit will be used to rebuild the damaged road and bridge. Surely the repair of Kentucky's bridges is a public function. Consequently, any recovery from this suit will inure to the benefit of Kentucky and its motorists. *Cf. Ky. ex rel. Brown v. Pocket Kings, Ltd.*, No. CIV. 14-27-GFVT, 2015 WL 1480311, at *7 (E.D. Ky. Mar. 31, 2015) (Van Tatenhove, J.) (Commonwealth real party in interest when recovery would inure to Commonwealth's treasury).

For all these reasons, "[The Kentucky Transportation Cabinet] is an alter ego of [Kentucky] and not a citizen under the meaning of 28 U.S.C. § 1332." *Schroer*, 2014 WL 2458104, at *3.

C

Finally, Plaintiff requests attorney fees for the cost of litigating what it characterizes as a frivolous attempt at removal. [R. 10.] In an order remanding an action to state court, a district court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Such an award serves "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party[.]" *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005). Accordingly, fee awards are appropriate only when "the removing party lacked an objectively reasonable basis for seeking removal." *Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013) (quoting *Martin*, 546 U.S. at 141). Whether the cited basis for removal was objectively unreasonable is left to the district court's discretion. *Id.*

Despite its ultimate decision to remand, the Court cannot say that Defendants' removal arguments were so objectively unreasonable as to warrant the award of attorney fees. *See*

7

*Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 600 (E.D. Ky. 2011) ("[Defendants'] arguments . . . although they did not carry the day, were at least reasonable arguments."). Accordingly, the Court declines to exercise its discretion to award attorney fees to the Plaintiff.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiff's Motion to Remand **[R. 10]** is **GRANTED IN PART and DENIED IN PART** and this matter is **REMANDED** to the Franklin Circuit Court for further proceedings.

This the 27th day of August, 2024.

Gregory F. Van Tatenhove
United States District Judge